# No. 14-826(L)

**No. 14-832(CON)**

## In the United States Court of Appeals for the Second Circuit

_____

CHEVRON CORPORATION,

*Plaintiff-Appellee*,

VS.

HUGO GERARDO CAMACHO NARANJO, JAVIER PIAGUAJE PAYAGUAJE,
STEVEN DONZIGER, THE LAW OFFICES OF STEVEN R. DONZIGER,
DONZIGER & ASSOCIATES, PLLC,

*Defendants-Appellants*,

(*caption continues on inside cover*)

_____

On Appeal from the United States District Court for the
Southern District of New York (The Honorable Lewis A. Kaplan)
_____

**BRIEF OF *AMICUS CURIAE* EARTHRIGHTS INTERNATIONAL
IN SUPPORT OF DEFENDANTS-APPELLANTS**
_____

Richard L. Herz
Marco B. Simons
Jonathan G. Kaufman
Michelle Harrison
Benjamin Hoffman
EARTHRIGHTS INTERNATIONAL
1612 K Street NW Suite 401
Washington, DC 20006
Tel: 202-466-5188
Fax: 202-466-5189
Email: rick@earthrights.org

*Counsel for* Amicus Curiae

STRATUS CONSULTING, INC., DOUGLAS BELTMAN, ANN MAEST,

*Defendants-Counter-Claimants*,

PABLO FAJARDO MENDOZA, LUIS YANZA, FRENTE DE DEFENSA DE LA AMAZONIA, AKA AMAZON DEFENSE FRONT, SELVA VIVA SELVIVA CIA, LTDA, MARIA AGUINDA SALAZAR, CARLOS GREFA HUATATOCA, CATALINA ANTONIA AGUINDA SALAZAR, LIDIA ALEXANDRA AGUIN AGUINDA, PATRICIO ALBERTO CHIMBO YUMBO, CLIDE RAMIRO AGUINDA AGUINDA, LUIS ARMANDO CHIMBO YUMBO, BEATRIZ MERCEDES GREFA TANGUILA, LUCIO ENRIQUE GREFA TANGUILA, PATRICIO WILSON AGUINDA AGUINDA, CELIA IRENE VIVEROS CUSANGUA, FRANCISCO MATIAS ALVARADO YUMBO, FRANCISCO ALVARADO YUMBO, OLGA GLORIA GREFA CERDA, LORENZO JOSE ALVARADO YUMBO, NARCISA AIDA TANGUILA NARVAEZ, BERTHA ANTONIA YUMBO TANGUILA, GLORIA LUCRECIA TANGUI GREFA, FRANCISO VICTOR TRANGUIL GREFA, ROSA TERESA CHIMBO TANGUILA, JOSE GABRIEL REVELO LLORE, MARIA CLELIA REASCOS REVELO, MARIA MAGDALENA RODRI BARCENES, JOSE MIGUEL IPIALES CHICAIZA, HELEODORO PATARON GUARACA, LUISA DELIA TANGUILA NARVAEZ, LOURDES BEATRIZ CHIMBO TANGUIL, MARIA HORTENCIA VIVER CUSANGUA, SEGUNDO ANGEL AMANTA MILAN, OCTAVIO ISMAEL CORDOVA HUANCA, ELIA ROBERTO PIYAHUA PAYAHUAJE, DANIEL CARLOS LUSITAND YAIGUAJE, BENANCIO FREDY CHIMBO GREFA, GUILLERMO VICENTE PAYAGUA LUSITANTE, DELFIN LEONIDAS PAYAGU PAYAGUAJE, ALFREDO DONALDO PAYAGUA PAYAGUAJE, MIGUEL MARIO PAYAGUAJE PAYAGUAJE, TEODORO GONZALO PIAGUAJ PAYAGUAJE, FERMIN PIAGUAJE PAYAGUAJE, REINALDO LUSITANDE YAIGUAJE, LUIS AGUSTIN PAYAGUA PIAGUAJE, EMILIO MARTIN LUSITAND YAIGUAJE, SIMON LUSITANDE YAIGUAJE, ARMANDO WILFRIDO PIAGUA PAYAGUAJE, ANGEL JUSTINO PIAGUAG LUCITANT, KEMPERI BAIHUA HUANI, AHUA BAIHUA CAIGA, PENTIBO BAIHUA MIIPO, DABOTA TEGA HUANI, AHUAME HUANI BAIHUA, APARA QUEMPERI YATE, BAI BAIHUA MIIPO, BEBANCA TEGA HUANI, COMITA HUANI YATE, COPE TEGA HUANI, EHUENGUINTO TEGA, GAWARE TEGA HUANI, MARTIN BAIHUA MIIPO, MENCAY BAIHUA TEGA, MENEMO HUANI BAIHUA, MIIPO YATEHUE KEMPERI, MINIHUA HUANI YATE, NAMA BAIHUA HUANI, NAMO HUANI YATE, OMARI APICA HUANI, OMENE BAIHUA HUANI, YEHUA TEGA HUANI, WAGUI COBA HUANI, WEICA APICA HUANI, TEPAA QUIMONTARI WAIWA, NENQUIMO VENANCIO NIHUA, COMPA GUIQUITA, CONTA NENQUIMO QUIMONTARI, DANIEL EHUENGEI, NANTOQUI NENQUIMO, OKATA QUIPA NIHUA, CAI BAIHUA QUEMPERI, OMAYIHUE BAIHUA, TAPARE AHUA YETE, TEWEYENE LUCIANA NAM TEGA, ABAMO OMENE, ONENCA ENOMENGA, PEGO ENOMENGA, WANE IMA, WINA ENOMENGA, CAHUIYA OMACA, MIMA YETI,

*Defendants*,

ANDREW WOODS, LAURA J. GARR, H5,

*Respondents.*

## CORPORATE DISCLOSURE STATEMENT

*Amicus* is a nonprofit corporation that has no parent corporation nor stock held by any publicly held corporation.

## TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ..........................................................i

TABLE OF AUTHORITIES ........................................................................ iv

STATEMENT OF IDENTITY AND INTEREST OF *AMICUS CURIAE* .......................... 1

STATEMENT OF THE ISSUE ADDRESSED BY *AMICUS CURIAE* ............................. 1

SUMMARY OF THE ARGUMENT .............................................................. 3

ARGUMENT ....................................................................................... 7

I.      The "adequacy" test for recognition of judgments should not be
        more searching than that for *forum non conveniens* ........................... 7

II.     The district court erred in requiring a higher standard of due
        process and impartiality than is ordinarily required in the *forum
        non conveniens* context .................................................................10

        A.      This Court has been skeptical of allegations of bias in *forum non
                conveniens* adequacy challenges, and must apply a similar
                approach to allegations of systemic inadequacy here .....................11

        B.      The district court erred by accepting evidence that is not
                typically accepted in *forum non conveniens* determinations of
                adequacy.........................................................................14

                1.      *Statements of a party's counsel* .............................................15

                2.      *State Department human rights reports* ................................16

                3.      *Newspaper articles and statements by Ecuador's
                        President*................................................................21

III.    Where a litigant has previously defeated challenges to the
        adequacy of a foreign forum in a *forum non conveniens* motion,
        that litigant is constrained from later asserting that its chosen
        legal system is inadequate ..........................................................23

        A.      A *forum non conveniens* dismissal, ousting a U.S. forum, is a
                calculated risk; judicial efficiency and settled expectations
                demand that a successful *forum non conveniens* movant bears the
                risk of a lack of due process or impartiality ........................ 25

        B.      If a litigant is allowed to challenge the adequacy of the forum it
                chose, it must do so in a timely manner, and under the same

standards and evidence as the dismissal ............................................. 27

CONCLUSION ............................................................................................................................30

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Abdullahi v. Pfizer, Inc.*,
  562 F.3d 163 (2d Cir. 2009)......................................................................................9

*Aguinda v. Texaco, Inc.*,
  303 F.3d 470 (2d Cir. 2002)....................................................................................15

*Aguinda v. Texaco, Inc.*,
  142 F.Supp.2d 534 (S.D.N.Y. 2001) ..............................................................13, 20, 21

*BFI Group Divino Corp. v. JSC Russian Aluminum*,
  481 F. Supp. 2d 274 (S.D.N.Y. 2007)....................................................................19

*Blanco v. Banco Indus. De Venezuela, S.A.*,
  997 F.2d 974 (2d Cir. 1993)............................................................................14, 22 n.9

*Bridgeway Corp. v. Citibank Corp.*,
  201 F.3d 134 (2d Cir. 2000) ..............................................................................13, 16

*Bridgeway Corp. v. Citibank*,
  45 F. Supp. 2d 276 (S.D.N.Y. 1999) ..................................................................13, 16

*Bridgeway Corp. v. Citibank, N.A.*,
  132 F. Supp. 2d 297 (S.D.N.Y. 2001)....................................................................28

*Carijano v. Occidental Petroleum Corp.*,
  643 F.3d 1216 (9th Cir. 2011) ............................................................................1, 18

*Chevron Corp. v. Donziger*, No. 11 Civ. 0691,
  2011 U.S. Dist. LEXIS 22729 (S.D.N.Y. Mar. 7, 2011) ....................................12 n.3

*Chevron Corp. v. Naranjo*,
  667 F.3d 232 (2d Cir. 2012)......................................................................................1

*Clough v. Perenco, LLC.*,
  2007 U.S. Dist LEXIS 61198 (S.D.Tex. Aug. 21, 2007) ..................................14 n.4

*Cortec Corp. v. Erste Bank Ber Oesterreichischen Sparkassen Ag*,
  535 F. Supp. 2d 403 (S.D.N.Y. 2008)..................................................................22, n.10

*El-Fadl v. Central Bank of Jordan*,
    75 F.3d 668 (D.C. Cir. 1996)............................................................................17

*Films by Jove, Inc. v. Berov*,
    250 F. Supp. 2d 156 (S.D.N.Y. 2003)...............................................................9

*Gonzales v. P.T. Pelangi Niagra Mitra Int'l*,
    196 F. Supp. 2d 482 (S.D. Tex. 2002) ........................................................ 17, 22 n.10

*Ikelionwu v. United States*,
    150 F.3d 233 (2d Cir. 1998)...............................................................................29

*In re Air Crash Disaster over Makassar Strait, Sulawesi*, No. 09-cv-3805,
    2011 U.S. Dist. LEXIS 2647 (N.D. Ill. Jan. 11, 2011)......................................22 n.10

*Irwin v. World Wildlife Fund, Inc.*,
    448 F. Supp. 2d 29 (D.D.C. 2006)......................................................................17

*MBI Group, Inc. v. Credit Foncier du Cameroon*,
    558 F. Supp. 2d 21 (D.D.C. 2008).....................................................................17

*Monegasque De Reassurances S.A.M. (monde Re) v. Nak Naftogaz of*
    *Ukraine*, 311 F.3d 488 (2d Cir. 2002) ...............................................................9, 12, 19

*Paolicelli v. Ford Motor Co.*, 289 Fed. Appx. 387,
    2008 U.S. App. LEXIS 18049 (11th Cir. 2008).................................................. 14 n.4

*Pavlov v. Bank of New York Co., Inc.*,
    135 F. Supp. 2d 426 (S.D.N.Y. 2001)..............................................................24

*PT United Can Co. v. Crown Cork & Seal Co.*,
    138 F.3d 65 (2d Cir. 1998) ............................................................................12-13

*Renegotiation Board v. Bannercraft Clothing Co.*,
    415 U.S. 1 (1974)...........................................................................................25-26

*Republic of Ecuador v. Chevron Corp.*,
    638 F.3d 384 (2d Cir. 2011)............................................................................24 n.11

*Rustal Trading US, Inc. v. Makki*,
    17 Fed. Appx. 331, 2001 U.S. App. LEXIS 19062 (6th Cir. 2001) ............. 22 n.9

*Tuazon v. R.J. Reynolds Tobacco Company,*
433 F.3d 1163 (9th Cir. 2006) ............................................................................12

*United States v. Bates*,
614 F.3d 490 (8th Cir. 2010)...............................................................................26

*United States v. Olano*,
507 U.S. 725 (1993)...............................................................................................29

*Wiwa v. Royal Dutch Petroleum Co.*,
226 F.3d 88 (2d Cir. 2000) ...................................................................................1

## STATE CASES

*CIBC Mellon Trust Co. v. Mora Hotel Corp. N.V.*, 100 N.Y.2d 215 (2003) .................8

## STATE STATUTES

N.Y. C.P.L.R. § 5304(a)(1) ........................................................................................8

## OTHER AUTHORITIES

Nat'l Conference of Commissioners on Uniform State Laws, Uniform
Foreign Money-Judgments Recognition Act, (cmt. to Sec. 4), *available
at*
http://www.law.upenn.edu/bll/archives/ulc/fnact99/1920_69/uf
mjra62.pdf............................................................................................... 8, 9 n.2

Restatement (Third) of The Foreign Relations Law of the United States
§ 482(1)(A) .........................................................................................................8

U.S. Dep't of State, Bureau of Democracy, Human Rights, & Labor, 2009
Country Reports on Human Rights Practices: Ecuador (2010), §4,
*available at*
http://www.state.gov/j/drl/rls/hrrpt/2009/wha/136111.htm........... 21 n.8

U.S. Dep't of State, Bureau of Democracy, Human Rights, & Labor, 2000
Country Reports on Human Rights Practices: Ecuador (2001), §1(e),
*available at*
*http://www.state.gov/j/drl/rls/hrrpt/2000/wha/766.htm* ...............................20

U.S. Dep't of State, Bureau of Democracy, Human Rights, & Labor, 2006
   Country Reports on Human Rights Practices: Nigeria (2007),
   *available at*
   http://www.state.gov/g/drl/rls/hrrpt/2006/78751.htm....................18 & n.6

U.S. Dep't of State, Bureau of Democracy, Human Rights, & Labor, 2009
   Country Reports on Human Rights Practices: Peru (2010), *available
   at* http://www.state.gov/g/drl/rls/hrrpt/2009/wha/136123.htm 18 & n.5

U.S. Dep't of State, Bureau of Democracy, Human Rights, & Labor, 2001
   Country Reports on Human Rights Practices: Ukraine (2002),
   *available at*
   http://www.state.gov/g/drl/rls/hrrpt/2001/eur/8361.htm.............19 & n.7

## STATEMENT OF IDENTITY AND INTEREST OF
### *AMICUS CURIAE*

EarthRights International (ERI) is a nonprofit organization that litigates transnational cases in U.S. courts on behalf of victims of human rights and environmental abuses worldwide.[1] Our cases often involve *forum non conveniens* challenges. *See, e.g.*, *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216 (9th Cir. 2011); *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88 (2d Cir. 2000). ERI also supports litigation outside the United States. ERI therefore has an interest in ensuring that courts correctly decide questions relating to the treatment of foreign judgments rendered after *forum non conveniens* dismissal.

## STATEMENT OF THE ISSUE ADDRESSED BY *AMICUS CURIAE*

An Ecuadorian appellate court upheld the contested Ecuadorian trial court judgment on the merits. In so doing, it applied a standard of review "similar to the American standard of *de novo* review, and [] applicable to questions both of fact and of law." *Chevron Corp. v. Naranjo*, 667 F.3d 232, 237 (2d Cir. 2012).

---

[1] No party's counsel authored this brief in whole or in part; no person other than *amicus* contributed money intended to fund preparing or submitting this brief.

The district court below did not find that the appellate court was bribed. Yet it held that the appellate court's decision did not break the chain of causation — and indeed could be ignored — in part because it concluded that the *entire* Ecuadorian court system was neither impartial nor provided due process. SPA-429-45. That finding was also a basis for the district court's conclusion that Chevron lacked an adequate remedy at law, even though Chevron did not avail itself of Ecuadorian procedures for overturning the allegedly tainted trial court judgment. SPA-481-482.

Chevron's hostility to the Ecuadorian court system was a 180-degree reversal from its prior position that the case should be tried in Ecuador, rather than New York. Indeed, the case was dismissed on *forum non conveniens* grounds over the Ecuadorian plaintiffs' objection that Ecuadorian courts were corrupt.

The district court below held that the standard for assessing the adequacy of a foreign tribunal in the *forum non conveniens* context is "far more forgiving of problems with foreign legal systems" than the standard applicable in the recognition context, which it applied. SPA-430, n.1585. That is, it held that courts should take far less seriously the due process concerns of a plaintiff seeking to avoid dismissal to a potentially inadequate forum than

2

those same concerns when raised by the defendant who got those claims dismissed to the foreign forum.

*Amicus* shows that: 1) the standard and evidence that may be considered in assessing the adequacy of a foreign forum in the *forum non conveniens* and recognition of foreign judgment contexts are the same (or, if anything, a higher showing of the adequacy of the foreign court system should be required for *forum non conveniens*); and 2) that judicial efficiency and fairness dictate that a litigant who has prevailed on a *forum non conveniens* motion bears the risk of the inadequacy of the foreign jurisdiction.

## SUMMARY OF THE ARGUMENT

Though foreign litigants often resort to litigation in United States courts due to well-justified fears that a foreign forum is inadequate, U.S. courts have historically been reluctant to find that an entire foreign legal system lacks due process or impartial tribunals. But the district court below exercised no such hesitance in holding Ecuador's court system to be systemically inadequate.

Our courts routinely examine the adequacy of foreign legal systems in two contexts: *forum non conveniens*, where a defendant seeks to dismiss a case in favor of litigation in another country's courts; and when determining whether to recognize a foreign judgment. In both instances, the adequacy test considers fundamental due process and the impartiality of the foreign courts.

3

The district court applied the wrong standard. In refusing to recognize the Ecuadorian appellate judgment, it explicitly held Ecuador's legal system to far more demanding scrutiny than this Court has applied in *forum non conveniens* cases. But the two adequacy tests must be equivalent (or it should be *more* difficult to show adequacy in the *forum non conveniens* context). If a foreign legal system is good enough to warrant dismissal of an American lawsuit, it is good enough to justify recognition of its judgments. Otherwise, courts could grant *forum non conveniens* dismissal even though the resulting judgment could *never* by recognized by the dismissing court. By requiring a lesser showing of inadequacy to prevent recognition than is required to prevent *forum non conveniens* dismissal, the district court erred.

The district court further erred by relying on evidence that is typically found insufficient in the *forum non conveniens* context. For example, although the district court relied on a State Department Country Report criticizing the Ecuadorian judiciary, courts have frequently held foreign forums to be adequate despite equivalent or stronger criticism of their legal systems in similar State Department reports. Indeed, the district court rejected such evidence at the *forum non conveniens* stage in *this case.*

To be clear, *amicus* believes that U.S. courts often place too *little* reliance on the Country Reports and are often too *quick* to dismiss concerns of political

4

influence or corruption in foreign forums in the *forum non conveniens* analysis. But courts cannot reject such evidence when sending a case to another country and yet rely on the same evidence when deciding whether to credit that country's judgments. This Court should not accept the district court's reliance on this evidence unless it makes explicit that it accepts similar evidence in *forum non conveniens* cases, and is prepared to find more foreign forums inadequate for *forum non conveniens* purposes.

In any event, because a *forum non conveniens* dismissal depends on the adequacy of the foreign forum, a litigant who wins a *forum non conveniens* motion cannot be allowed to later challenge the adequacy of the foreign court system in order to deny the validity of the foreign judgment. This is so even if the foreign judicial system has changed in the interim. A litigant who gives up the protections of the U.S. judicial system in order to litigate in another country must bear the risk that the other country's courts will not provide due process or impartiality — particularly when that litigant was placed on notice by its opponent's opposition to *forum non conveniens* of existing problems with due process or impartiality.

Regardless of whether the technical requirements of judicial estoppel are met, allowing a subsequent challenge to the adequacy of the foreign courts would undermine the settled expectations of the parties and destroy the

5

judicial efficiency that *forum non conveniens* is intended to promote; indeed, it would raise the possibility of unending litigation and wasted resources. Thus, the district court erred in allowing Chevron to argue that the Ecuadorian courts lack due process or impartiality.

Even if a litigant who prevails on *forum non conveniens* is allowed to challenge the adequacy of the foreign court system, it must do so in a timely manner. When the first indications of unfairness arise, the litigant must seek to return to the United States forum or give up the right to do so. A litigant who sits on its rights cannot expect U.S. courts to provide relief after the opposing party has gone through years of expensive litigation and obtained a judgment in its favor. Again, the court below erred, because it found the Ecuadorian courts to be inadequate based on events that began roughly a decade ago.

The district court's approach would encourage litigants to seek *forum non conveniens* dismissal even (and perhaps especially) when they lack confidence in the foreign forum, and would reward parties who abandon positions they have already convinced a U.S. court to accept. Because that approach is a recipe for gamesmanship and legal quagmires, this Court should clarify that the standard against which courts judge a foreign legal system is the same in the recognition context as it is in the *forum non conveniens*

6

context, and should not allow a party that brings a successful *forum non conveniens* motion to later challenge the adequacy of its chosen forum.

## ARGUMENT

**I.    The "adequacy" test for recognition of judgments should not be more searching than that for *forum non conveniens*.**

The district court found that the issue of what effect to give to the Ecuadorian appellate decisions requires recourse to rules for recognizing foreign judgments. *See* SPA-422; SPA-429, n.1580. Both the doctrine of *forum non conveniens* and that governing the recognition in U.S. courts of foreign money judgments include evaluation of the foreign forum's adequacy. As a matter of law, these tests include the same elements and are functionally equivalent. As a matter of policy, this must be so in order to avoid absurd consequences.

But the district court held otherwise. SPA-430, n. 1585. It concluded that although courts consider whether the foreign legal system is fair in the context of both the enforcement of foreign judgments and *forum non conveniens*, "[t]he latter is determined under a different standard that is far more forgiving of problems with foreign legal systems." *Id.* The district court cited no authority for that proposition, *id.*, and it is wrong.

In refusing to recognize the Ecuadorian appellate judgment, the district

court applied the exception to recognition if "the judgment was rendered under a judicial system that does not provide impartial tribunals or procedures compatible with due process of law." SPA-429, n.1580 (quoting Restatement (Third) of The Foreign Relations Law of the United States § 482(1)(A) and citing the virtually identical New York codification of the Uniform Recognition of Foreign Country Money Judgments Act. N.Y. C.P.L.R. § 5304(a)(1)).

This "systemic inadequacy" test has two elements: due process and the absence of bias. "New York has traditionally been a generous forum in which to enforce judgments for money damages rendered by foreign courts." *CIBC Mellon Trust Co. v. Mora Hotel Corp. N.V.*, 100 N.Y.2d 215, 221 (2003). With respect to due process, the systemic inadequacy test considers whether the "*system* as a whole [is] incompatible with our notions of due process," regardless of whether "the foreign tribunal's procedures exactly match those of New York." *Id.* at 222. This is a high hurdle; the commentary to the Uniform Foreign Money-Judgments Recognition Act, from which the New York statute is derived, states that "a mere difference in the procedural system is not a sufficient basis for non-recognition. A case of serious injustice must be

8

involved."[2] With respect to bias and impartiality, courts have suggested that a finding of systemic inadequacy would require a "sweeping condemnation of [the foreign] judiciary," which is rarely warranted. *Films by Jove, Inc. v. Berov*, 250 F. Supp. 2d 156, 207 (S.D.N.Y. 2003).

The same factors (and more) are considered in *forum non conveniens* cases. The test for the adequacy of the foreign forum incorporates any concerns for "lack of due process," as well as additional concerns such as corruption or undue delay. *Abdullahi v. Pfizer, Inc.*, 562 F.3d 163, 189 (2d Cir. 2009). Furthermore, in the *forum non conveniens* context, courts also consider whether a foreign forum is "'biased,'" *Monegasque De Reassurances S.A.M. (monde Re) v. Nak Naftogaz of Ukraine*, 311 F.3d 488, 499 (2d Cir. 2002), although they are similarly "reluctant" to so find. *See id*. Thus the legal inquiry undergirding a finding of adequacy in the *forum non conveniens* context, just like the systemic inadequacy test, considers both due process and lack of bias.

It is logical that the two tests are at least equivalent. The district court's double standard would allow cases to be dismissed from U.S. courts in favor of a foreign forum, even where it would then deny recognition of any judgment issued by that forum. Justice would be ill-served by a rule that compels parties

---

[2] Nat'l Conference of Commissioners on Uniform State Laws, Uniform Foreign Money-Judgments Recognition Act, at 3 (cmt. to Sec. 4), *available at* http://www.law.upenn.edu/bll/archives/ulc/fnact99/1920_69/ufmjra62.pdf.

to litigate in a system incapable of producing an enforceable judgment. That would leave many litigants with, at best, the ability to start over here, and at worst, no remedy at all.

If anything, it should be *easier* to show inadequacy in the *forum non conveniens* context than in the recognition context. An inadequacy finding offends comity far more when a court denies recognition. In the *forum non conveniens* context, a court is holding only that it will defer to the plaintiff's choice of a U.S. forum and thus the court's own unquestioned ability to fairly adjudicate the case. That is surely less offensive than saying to the foreign forum that we will not recognize a judgment you have already reached, because your system is too unfair.

Thus, the two doctrines must be treated equivalently, or the recognition test must be more forgiving than the *forum non conveniens* adequacy test.

## II.   The district court erred in requiring a higher standard of due process and impartiality than is ordinarily required in the *forum non conveniens* context.

In considering the systemic adequacy of Ecuador's courts, the district court applied the wrong standard to the wrong evidence. It mistakenly applied a standard more disrespectful to Ecuador than this Court has applied in the *forum non conveniens* context. And it relied on evidence that would ordinarily not be sufficient to show inadequacy in that context. Indeed, the

10

court improperly applied a standard more favorable to finding inadequacy than that applied in originally dismissing *this case* to Ecuador, and it credited types of evidence that were previously rejected.

Recognition principles, which incorporate the same test as *forum non conveniens*, do not require this approach, nor is it advisable as a matter of policy. Although *amicus* would not be opposed to a more rigorous analysis of the adequacy of a foreign forum in the *forum non conveniens* context as a prospective matter, the recognition of judgments test cannot allow a determination of inadequacy based on a less onerous showing than is required in the *forum non conveniens* context, and courts considering a foreign judgment cannot consider evidence that is typically insufficient to show inadequacy of a forum for *forum non conveniens* purposes.

### A.    This Court has been skeptical of allegations of bias in *forum non conveniens* adequacy challenges, and must apply a similar approach to allegations of systemic inadequacy here.

For better or worse, this Court has been skeptical of allegations of bias leveled by litigants arguing that a foreign forum is inadequate for *forum non conveniens* purposes. Given that, the district court here was too quick to credit such allegations.

The district court did not precisely identify what features of the Ecuadorian judicial system it found to be either lacking in due process or

11

suggestive of lack of impartiality, but instead generally found that susceptibility to political influence, especially influence by the President, rendered Ecuadorian judges biased. Although the district court found that the situation has "deteriorated in recent years[,]" it acknowledged that "[t]he Ecuadorian judiciary has been in a state of severe institutional crisis for some time." SPA-432.[3]

This Court has never accepted an allegation, in the *forum non conveniens* context, that a foreign judiciary is sufficiently lacking in impartiality to render the forum inadequate. And other courts routinely reject such claims. *See Tuazon v. R.J. Reynolds Tobacco Company,* 433 F.3d 1163, 1179 (9th Cir. 2006) (noting that court was aware of only two federal cases holding alternative forums inadequate because of corruption). This Court is "reluctant to find foreign courts 'corrupt' or 'biased,'" and has stated that, in order "'to pass value judgments on the adequacy of justice and the integrity of'" an entire judicial system, it is not sufficient to present "'bare denunciations and sweeping generalizations.'" *Monegasque De Reassurances*, 311 F.3d at 499. Indeed, "considerations of comity preclude a court from adversely judging the quality of a foreign justice system absent a showing of inadequate procedural

---

[3] The district court previously described that time frame as "decades." *Chevron Corp. v. Donziger*, No. 11 Civ. 0691, 2011 U.S. Dist. LEXIS 22729, at *113 (S.D.N.Y. Mar. 7, 2011).

safeguards, so such a finding is rare." *PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 73 (2d Cir. 1998) (citation omitted).

In the enforcement of judgments context, this Court has only once found a foreign judiciary to be inadequate. The analysis in that case, *Bridgeway Corp. v. Citibank Corp.*, 201 F.3d 134 (2d Cir. 2000), is consistent with the standard applied in *forum non conveniens* cases. There, the evidence showed that Liberia had been in a civil war during the litigation at issue, and that the Liberian judiciary was not organized in keeping with the Liberian Constitution; *id.* at 142 & n.3; in fact, the judicial system "collapsed for six months following the outbreak of fighting," and "justices and judges served at the will of the leaders of the warring factions." *Bridgeway Corp. v. Citibank*, 45 F. Supp. 2d 276, 280, 287 (S.D.N.Y. 1999).

It would be highly incongruous for the federal courts to express reluctance to pass judgment on a foreign judicial system when deciding whether a case should be litigated in a foreign forum, but then be quick to condemn the adequacy of another country's legal system when it comes time to consider whether to respect the judgment. But that is precisely what the district court here did. At the *forumnon conveniens* stage, the district court applied the usual "reluctan[ce]" to find inadequacy. *Aguinda v. Texaco, Inc.,* 142 F.Supp.2d 534, 544 (S.D.N.Y. 2001). But the court below applied a "far

13

[less] forgiving" standard. SPA-430, n.1585.

In contrast to the active civil war in *Bridgeway*, the allegations here were closer to the "political unrest" rejected in *Blanco v. Banco Indus. De Venezuela, S.A.*, 997 F.2d 974, 981 (2d Cir. 1993). The district court erred in crediting the kind of generalized allegations of bias and corruption that are routinely rejected by courts in the *forum non conveniens* context.[4]

## B. The district court erred by accepting evidence that is not typically accepted in *forum non conveniens* determinations of adequacy.

The district court also erred in the kinds of evidence it considered and the weight it gave to that evidence. The court relied on the testimony of an expert retained by Chevron; out-of-court statements by Steven Donziger, counsel for the Ecuadorians in the underlying litigation (and himself a defendant here); the U.S. Department of State's Country Reports on Human Rights Practices; and newspaper and radio clips containing public statements by Ecuador's president expressing support for the LAPs. Experts certainly may provide evidence of the inadequacy of a foreign judicial system, although

---

[4] Other courts have dismissed on *forum non conveniens* grounds to an Ecuadorian forum or found it to be adequate after or in the midst of many of the events that the district court cited as demonstrating systemic inadequacy. *See Paolicelli v. Ford Motor Co.*, 289 Fed. Appx. 387, 390, 2008 U.S. App. LEXIS 18049, at *4-10 (11th Cir. Aug. 20, 2008); *Clough v. Perenco, L.L.C.*, 2007 U.S. Dist. LEXIS 61198, at *8-9 (S.D. Tex. Aug. 21, 2007).

*amicus* takes no position on the validity of Chevron's expert's testimony or his competency. Reliance on counsel's statements, however, was obviously error. As for Country Reports, newspapers and statements by public officials, similar evidence has been rejected in the *forum non conveniens* context; if this and other courts do not accept such evidence of inadequacy for *forum non conveniens* purposes, it makes little sense to credit the same evidence here.

### 1.    Statements of a party's counsel

*Amicus* has found no case where a court has relied on the unsworn statements of a party's counsel, apparently lacking in personal knowledge, regarding the adequacy of a foreign forum's judiciary. But that is what the district court here did. As counsel for the Ecuadorians, Mr. Donziger opposed *forum non conveniens* dismissal to Ecuador, arguing that the "Ecuadorian courts are subject to corrupt influences and are incapable of acting impartially." *Aguinda v. Texaco, Inc.*, 303 F.3d 470, 478 (2d Cir. 2002). This Court rejected Mr. Donziger's argument, *see id.*, but he continued to express his doubts about the Ecuadorian legal system — an entirely consistent position. But now, after Mr. Donziger's clients won a judgment in the courts that he criticized, the district court has found his doubts to be evidence of systemic inadequacy.

Mr. Donziger's opinion of the Ecuadorian judiciary carried no weight in

15

the *forum non conveniens* context, and that is entirely correct. But his opinions are either evidence or they are not. The *forum non conveniens* dismissal did not somehow transmogrify his opinions into competent expert evidence.

The district court's approach puts attorneys opposing a *forum non conveniens* motion in an impossible situation: if they argue that the foreign forum is inadequate, and lose, they risk having their own words later used against them to block recognition of a resulting foreign judgment. Such unfairness should not be countenanced.

## 2.    *State Department human rights reports*

Reliance on the State Department's human rights reports to determine the adequacy of a foreign forum is not inappropriate; this Court did so in *Bridgeway*, 201 F.3d at 143-44. But the district court relied on reports that do not indicate greater inadequacy than reports for countries that in the *forum non conveniens* context have been found adequate. Indeed, within this very Chevron-Ecuador litigation, the Country Reports were assessed under a double standard. The same sort of statements found insufficient to suggest inadequacy for *forum non conveniens* were held below to suggest the opposite.

In *Bridgeway*, the State Department report noted that the Liberian judicial system collapsed for six months. *See* 45 F. Supp. 2d at 287. By contrast, with respect to Ecuador, the relevant report presents generalized allegations

16

of political pressure and corruption, *see* SPA-440-41; similar reports have often been rejected in the *forum non conveniens* context.

For example, *MBI Group, Inc. v. Credit Foncier du Cameroon*, 558 F. Supp. 2d 21 (D.D.C. 2008), considered a State Department report indicating that the Cameroonian "'judiciary remained highly subject to executive influence, and corruption and inefficiency remained serious problems.'" *Id.* at 29. Nonetheless, the court dismissed the report as "generalized allegations" and found Cameroon to be an adequate forum. *Id.* at 30.

Similarly, in *El-Fadl v. Central Bank of Jordan*, 75 F.3d 668 (D.C. Cir. 1996), the D.C. Circuit rejected "reliance on a State Department report expressing 'concern about the impartiality' of the Jordanian court system." *Id.* at 678. And in *Irwin v. World Wildlife Fund, Inc.*, 448 F. Supp. 2d 29 (D.D.C. 2006), the court rejected reliance on a State Department report finding the Gabonese judiciary was subject "to government influence" and "corruption." *Id.* at 34. Likewise, in *Gonzales v. P.T. Pelangi Niagra Mitra, Int'l*, the court considered a State Department report that stated that "'low salaries encourage widespread corruption, and [Indonesian] judges are subject to considerable pressure from government authorities, who often exert influence over the outcome of numerous cases,'" but nonetheless found Indonesia to be an adequate forum. 196 F. Supp. 2d 482, 487 n.5, 488 (S.D. Tex. 2002).

17

In fact, there are numerous other examples of courts in *forum non conveniens* cases, including this Court, finding foreign forums to be adequate where the most recent State Department reports describe conditions that are as bad, or considerably worse, than those noted in the Ecuador report on which the district court below relied. For example:

- *Peru*: 2009 report:[5] "NGOs and other analysts complained that the judiciary was politicized and corrupt . . . Allegations of widespread corruption in the judicial system continued. Experts voiced concerns about increasing politicization of the judiciary during the current administration." *Compare Carijano*, 643 F.3d at 1226-27 (affirming rejection of allegations that Peruvian courts were inadequate due to corruption and lack of judicial independence).

- *Nigeria*: 2006 report:[6] "[T]he judicial branch remained susceptible to executive and legislative branch pressure. Political leaders influenced the judiciary, particularly at the state and local levels. Understaffing, underfunding, inefficiency, and corruption continued to prevent the

---

[5] U.S. Dep't of State, Bureau of Democracy, Human Rights, & Labor, 2009 Country Reports on Human Rights Practices: Peru § 1(e) (2010), *available at* http://www.state.gov/g/drl/rls/hrrpt/2009/wha/136123.htm.

[6] U.S. Dep't of State, Bureau of Democracy, Human Rights, & Labor, 2006 Country Reports on Human Rights Practices: Nigeria §§ 1(e) & 3 (2007), *available at* http://www.state.gov/g/drl/rls/hrrpt/2006/78751.htm.

judiciary from functioning adequately.  Citizens encountered . . .
frequent requests from judicial officials for small bribes to expedite
cases. . . . Corruption was massive, widespread, and pervasive, at all
levels of the government and society." *Compare BFI Group Divino Corp. v.
JSC Russian Aluminum*, 481 F. Supp. 2d 274, 283 (S.D.N.Y. 2007)
(rejecting concerns that "Nigerian courts will not fairly and correctly
adjudicate the case"); *aff'd*, 298 Fed. Appx. 87 (2d Cir. 2008).

- *Ukraine*: 2001 report:[7] "[I]n practice the judiciary is subject to
  considerable political interference from the executive branch and also
  suffers from corruption and inefficiency . . . . The judiciary lacks
  sufficient staff and funds, which engenders inefficiency and corruption
  and increases its dependence on the executive, since the court receives
  all its funding from the Ministry of Justice." *Compare Monegasque de
  Reassurances*, 311 F. 3d at 499 (rejecting claims of corruption in the
  Ukrainian courts).

Perhaps most problematic, however, is that the treatment afforded
Country Reports at the various stages of *this* litigation was inconsistent. The

---

[7] U.S. Dep't of State, Bureau of Democracy, Human Rights, & Labor, 2001
Country Reports on Human Rights Practices: Ukraine §§ 1(e) (2002), *available
at* http://www.state.gov/g/drl/rls/hrrpt/2001/eur/8361.htm.

district court below relied on statements in the Country Reports that are indistinguishable from Country Report statements that, at the 2001 *forum non conveniens* stage, Judge Rakoff declined to credit. When Chevron's position on the Ecuadorian judiciary changed, so too did the approach to the Country Reports.

At the *forum non conveniens* stage, the district court deemed the 1999 and 2000 reports insufficient to demonstrate Ecuador was an inadequate forum, despite noting that the State Department "continues to describe Ecuador's legal and judicial systems as 'politicized, inefficient, and sometimes corrupt' so far as certain 'human rights' practices are concerned." *Aguinda,* 142 F.Supp.2d at 545 (quoting State Department, 1999 Ecuador Country Report on Human Rights (dated February, 2000) at 1). Other portions of both reports noted the judicial system's susceptibility to corruption and external pressure more generally. *E.g.* U.S. Dep't of State, Bureau of Democracy, Human Rights, & Labor, 2000 Country Reports on Human Rights Practices: Ecuador (2001), §1(e), *available at*

*http://www.state.gov/j/drl/rls/hrrpt/2000/wha/766.htm* ("the judiciary is susceptible to outside pressure and corruption… . Judges reportedly rendered decisions more quickly or more slowly depending on political pressure, or in some instances, the payment of bribes."). The district court, however,

concluded that Ecuador was an adequate alternative forum. *Aguinda,* 142 F. Supp. 2d at 545.

Here, however, the district court gave significantly more weight to nearly identical descriptions of the Ecuadorian judicial system in the 2008 and 2009 reports. *See* SPA-441. Indeed the court quoted these reports for the proposition that "the judiciary was 'susceptible to outside pressure and corruption'", *id.*, even though, as has just been noted, the 2000 Country Report said the same thing. *See also* Brief for Defendants-Appellants Steven Donziger *et. al.* at 107.[8] Surely equivalent statements in the Country Reports should not be treated differently when Chevron argued Ecuador is an inadequate forum than when it argued Ecuador was an adequate forum.

### 3. Newspaper articles and statements by Ecuador's President.

The district court also cited, as evidence of Ecuadorian President Rafael Correa's "influence" in the Lago Agrio litigation and over the judiciary, press releases and news articles containing general statements of his support for

---

[8] The 2009 report references accusations lodged by Chevron about the Lago Agrio litigation, (as well as counter accusations lodged by the plaintiffs of wrongdoing by Chevron), and noted that the Prosecutor General opened an investigation. See U.S. Dep't of State, Bureau of Democracy, Human Rights, & Labor, 2009 Country Reports on Human Rights Practices: Ecuador (2010), §4, *available at* http://www.state.gov/j/drl/rls/hrrpt/2009/wha/136111.htm. The Country Report took no position on the validity of these allegations, and the district court did not cite this aspect of the report. SPA-440-41.

the LAPs. SPA-443-45. But courts have routinely found newspaper articles insufficient to demonstrate the inadequacy of a foreign forum.[9] Indeed, even statements by government officials expressly describing judicial corruption have been deemed insufficient.[10]

Amicus has found no cases where general expressions of support by government officials for citizens involved in litigation to redress harms, or general statements denouncing the actions (or inaction) of a company widely perceived to be responsible for those harms, were deemed evidence of a forum's inadequacy. That is hardly surprising, since such statements are common in our system. Donziger Br. at 108-09. Imagine our reaction if another nation's courts pointed to such statements as a basis for finding U.S. courts inherently unjust.

---

[9] See e.g. Rustal Trading US, Inc. v. Makki, 17 Fed. Appx. 331, 337, n. 5, 2001 U.S. App. LEXIS 19062, at *13 (6th Cir. 2001); Blanco, 997 F.2d at 981.
[10] See e.g. Cortec Corp. v. Erste Bank Ber Oesterreichischen Sparkassen Ag, 535 F. Supp. 2d 403, 411 (S.D.N.Y. 2008) (finding forum adequate despite news reports and government statements suggesting political corruption in the judiciary); Gonzales, 196 F. Supp. 2d at 487 (finding forum adequate despite "voluminous proof of corruption" including "newspaper articles and statements by prominent Indonesian politicians"); In re Air Crash Disaster over Makassar Strait, Sulawesi, 2011 U.S. Dist. LEXIS 2647, at *15-16 (N.D. Ill. Jan. 11, 2011) (newspaper articles focused on "generalized concerns about corruption expressed by Indonesian officials" insufficient to demonstrate inadequacy of forum).

The general statements relied upon by the district court demonstrate less than the statements courts have deemed insufficient in the *forum non conveniens* context.

## III. Where a litigant has previously defeated challenges to the adequacy of a foreign forum in a *forum non conveniens* motion, that litigant is constrained from later asserting that its chosen legal system is inadequate.

Thus far, *amicus* has assumed it was proper for the district court to review the litigation in Ecuador and to consider the adequacy of Ecuador's judiciary. It was not. Having chosen to oust the LAPs' choice of forum and litigate in Ecuador rather than here, Chevron ought to be barred from now attacking that litigation here. Otherwise, *forum non conveniens* will be just a defendant's first bite at the apple — defendants will inevitably return for another bite if they lose abroad. Indeed, even that would not be the end; here, for example, nothing would stop the LAPs from challenging the ruling below in Ecuador or anywhere else. And if U.S. courts do not respect the tribunals to which they have already dismissed an action, there is little reason to think other courts will honor the results of our proceedings.

Regardless, *amicus* assumes here that if a party gets a case dismissed on *forum non conveniens* grounds, and its opponent's counsel, a U.S. citizen, then allegedly bribes the foreign judge, that party *may* in some circumstances have

recourse in United States courts. But since that party successfully displaced a U.S. forum by defeating challenges to the adequacy of the foreign forum, it cannot then argue that the foreign forum is *systemically* inadequate.

The defendants have persuasively argued that Chevron is judicially estopped from attacking the adequacy of Ecuador's judicial system. Brief for Defendants-Appellants Hugo Gerardo Camacho Naranjo and Javier Piaguaje Payaguaje at 54-59; Donziger Br. at 100-105. Indeed, Judge Kaplan himself suggested in a prior case that a party's assertion in the *forum non conveniens* context that a foreign legal system was adequate would likely estop it from later challenging a resulting judgment on the ground that the forum does not provide impartial tribunals and due process. *Pavlov v. Bank of New York Co., Inc.*, 135 F. Supp. 2d 426, 435 and n.52 (S.D.N.Y. 2001), *vacated on other grounds*, 25 F. App'x 70 (2d Cir. 2002).

But regardless of whether estoppel applies, in a case such as this, it would undermine judicial efficiency and settled expectations and create perverse incentives to allow that same litigant to subsequently attack the adequacy of the foreign forum.[11] The district court erred by allowing Chevron

---

[11] The district court found that Chevron is not bound by arguments made by Texaco. SPA-468-67. But this Court has already rejected that claim. *Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 389 n.3 (2d Cir. 2011). Regardless, the case was heard in Ecuador only because of the *forum non conveniens*

to challenge the adequacy of the entire Ecuadorian court system, and further erred by allowing such a challenge many years after the allegedly inadequate conditions arose.

A. **A *forum non conveniens* dismissal, ousting a U.S. forum, is a calculated risk; judicial efficiency and settled expectations demand that a successful *forum non conveniens* movant bears the risk of a lack of due process or impartiality.**

Plaintiffs often choose to litigate in the United States because of this country's stability and its tribunals' impartiality. When a defendant urges *forum non conveniens* dismissal, it takes a calculated risk that its preferred forum will not similarly provide due process or unbiased courts. This is particularly so where, as here, the defendant prevails over plaintiffs' objections that the foreign forum lacks due process and impartiality. Because this risk is not present in the United States, the movant should bear it.

Litigants take calculated risks all the time. When such a risk fails, the litigant invariably suffers consequences. The Supreme Court, on several occasions, has underscored the importance of letting a calculated risk lie, of not reopening it later to re-litigation. Commenting on settlements, for example, the Supreme Court has held that "[t]he one who pays possibly might

---

dismissal. Therefore, even if the district court were correct, all of the concerns with promoting judicial efficiency and preventing gamesmanship described herein still apply.

pay less if he resorts to the factfinder instead of making the settlement. But he might pay more. That is the calculated risk he takes." *Renegotiation Board v. Bannercraft Clothing Co.*, 415 U.S. 1, 25 (1974).

When a litigant prevails on *forum non conveniens*, the parties and the court expect that the case will be litigated in the foreign forum. Certainly, a plaintiff who objected to that forum can rightfully expect that the movant will not later challenge its adequacy.

Judicial efficiency also demands that the prevailing *forum non conveniens* movant be compelled to live with the consequences of its choice. Parties cannot elect to change forums every time they wish to claim the legal system that they chose is treating them unfairly; that would open the floodgates to never-ending re-litigation of claims every time a calculated risk goes wrong; would permit parties to waste significant resources of litigants and courts in multiple legal systems and would allow cases to drag on indefinitely. In short, it would destroy finality. Accordingly, this strategy should be disallowed for the same reasons underpinning the law of the case doctrine: to prevent "the relitigation of settled issues in a case, thus protecting the settled expectations of parties, ensuring uniformity of decisions, and promoting judicial efficiency." *United States v. Bates*, 614 F.3d 490, 494 (8th Cir. 2010).

Here, Chevron calculated that Ecuador would be a more favorable forum in which to defend against the Ecuadorians' environmental claims than the stable, indisputably adequate forum of the Southern District of New York. Chevron knew that by ousting the United States forum in exchange for the less stable forum of Ecuador, it was surrendering the protection of our federal courts and assuming any risks inherent in Ecuador's system.

Ecuador apparently has specific procedures by which Chevron could, and can still, challenge the alleged bribery of a judge, apart from direct appeal. *See* Donziger Br. at 37-38, 75, 93 (discussing Ecuador's Collusion Prosecution Act (1977), SPA-631-32). But Chevron has thus far chosen not to pursue these remedies. The district court did not require Chevron to do so — and it discarded the judgment on appeal — all based on its inadequacy finding. The district court erred by allowing Chevron to avoid the consequences of its own calculated risk.

### B.  If a litigant is allowed to challenge the adequacy of the forum it chose, it must do so in a timely manner, and under the same standards and evidence as the dismissal.

The district court suggested that the state of the Ecuadorian judiciary changed after the *forum non conveniens* dismissal. SPA-432. That ought not to matter, precisely because the movant who overcomes an argument that the foreign forum is already inadequate should bear the risk of unfavorable

27

changes. But if a successful *forum non conveniens* movant may subsequently challenge the adequacy of its chosen foreign forum at all, four things are clear.

First, such a challenge may *only* be allowed on the basis of changed circumstances. And those changes must be *unforeseeable*. Here, in opposing *forum non conveniens*, the LAPs specifically argued that Ecuador was already an inadequate forum. But the district court failed to consider whether Chevron was on notice of the risk that the integrity of Ecuador's judiciary would decline — that is, whether the changes that it found occurred were of the sort that a reasonable person would understand to be possible given the LAPs arguments that the Ecuadorian forum was inadequate.

Second, if the foreign justice system's adequacy has declined, the defendant is not simply exempted from liability; at most, it must concede to re-litigate the claims in the original U.S. forum. *See Bridgeway Corp. v. Citibank, N.A.*, 132 F. Supp. 2d 297 (S.D.N.Y. 2001) (permitting plaintiff to litigate claim in New York after finding Liberian judgment unenforceable on grounds that Liberia did not provide due process). Any other result would deny due process to the plaintiffs, who chose an adequate forum to begin with, had it ousted by defendants in favor of a foreign forum, and then lost their claims in that forum due to a decline in its court system.

Third, the successful *forum non conveniens* movant must raise any

28

challenge to the adequacy of its chosen forum when the new conditions that compromise due process or impartiality become apparent. Failure to timely complain forfeits the right to do so. Any other rule would waste considerable resources of the parties and the courts, and allow a litigant to game the system.

"[F]orfeiture is the failure to make the timely assertion of a right," *United States v. Olano*, 507 U.S. 725, 733 (1993), and it should apply where a litigant declines to timely assert any claim that a foreign court system is inadequate. The equitable doctrine of laches also applies. Chevron relied solely on the court's equitable power; but "equity aids the vigilant, not those who sleep on their rights." *Ikelionwu v. United States*, 150 F.3d 233, 237 (2d Cir. 1998) (internal quotation marks omitted). Where a party waits years to raise a claim that a foreign forum is inadequate, it forces the opposing party to waste time in litigation; such "unreasonable and inexcusable delay that" results in "prejudice to" the opposing party cannot be countenanced. *Id.* (internal quotation marks omitted).

Here, the district court erred by allowing Chevron to attack the Ecuadorian courts only when an adverse judgment was imminent, and years after the conditions Chevron complains of arose. The district court found, based on Chevron's evidence and argument, that Ecuador, "at no time relevant

29

to this case, provided impartial tribunals or procedures compatible with due process of law." SPA-445. It concluded that the Ecuadorian judiciary "never has recovered" from events dating back to 2004. SPA-432-33. If so, the district court should not have allowed Chevron such an untimely reversal of position; it failed even to require any showing of timeliness on Chevron's part.

If the district court has the authority to permit Chevron to avoid the consequences of its calculated risk and attack its chosen forum — then the court had that authority all along. It was incumbent upon Chevron to raise the issue much earlier, rather than waste millions of dollars in resources in both the United States and Ecuador and undermine judicial efficiency.

Fourth, even if this Court were to conclude, *contra* Section I, that inadequacy is ordinarily easier to show in the *forum* context than for recognition purposes, the standards should at least be the same where, as here, the litigant attacking the adequacy of the foreign justice system has previously won dismissal to those same courts. Our courts should not reward a party that reverses course with a more favorable standard than its opponent faced in making the same argument.

## CONCLUSION

Under the district court's approach, a defendant can oust a U.S. forum in favor of a foreign jurisdiction that may well lack due process and impartiality.

30

The defendant can force the plaintiffs to litigate in the foreign forum for years, betting on a win. But if that gamble does not pay off, and a loss is imminent or realized, the defendant can then return to the U.S. courts and mount its collateral attack. Allowing this strategy sanctions the misuse of the judicial process and undermines its integrity.

For the foregoing reasons, *amicus* urges this Court to hold that the same standards and evidence govern the determination of adequacy of a foreign forum for recognition of judgments as in the *forum non conveniens* context, and that, regardless of changed circumstances, a litigant who ousts U.S. jurisdiction based on *forum non conveniens* cannot later challenge the adequacy of the foreign judicial system.


Dated: July 8, 2014                    Respectfully submitted,

                                       /s/ Richard L. Herz
                                       Richard L. Herz
                                       Marco B. Simons
                                       Jonathan G. Kaufman
                                       Michelle Harrison
                                       Benjamin Hoffman
                                       EARTHRIGHTS INTERNATIONAL
                                       1612 K Street NW Suite 401
                                       Washington, DC 20006

                                       Counsel for *amicus curiae*

## CERTIFICATE OF COMPLIANCE PURSUANT TO
## FED. R. APP. P. 29(d) AND FED. R. APP. P. 32(a)(7)(A) and (B)

I certify that, pursuant to Fed. R. App. P. 29(d) and 32(a)(7)(A) and (B), the attached *amicus* brief is proportionally spaced, has a typeface of 14 points or more and has 6879 words, no more than half the maximum length allowed pursuant to Fed. R. App. P. 32(a)(7)(A) and (B),  according to Word, the word-processor used to create the brief.

DATED: July 8, 2014                Respectfully submitted,

*/s/ Richard L. Herz*
Richard L. Herz
EARTHRIGHTS INTERNATIONAL
Counsel for *amicus curiae*

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Second Circuit by using the appellate CM/ECF system on July 8, 2014.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ Richard L. Herz
Richard L. Herz